**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALLEN SWERDLICK, JOHN ZAK, ANTHONY ZAPPULLA, JOHN SULLIVAN, ANTHONY STORZ, LUIS HERRERA as TRUSTEES OF THE LOCAL 807 LABOR MANAGEMENT PENSION FUND, and THE LOCAL 807 LABOR-MANAGEMENT PENSION FUND, | Civil Action No.: 14-04774 (CCC)(JBC) |
| Plaintiffs, | **OPINION** |
| v. | |
| AMERICAN COMPRESSED GASES, INC., TRUCAR LEASING CORP., GOLDFINCH REAL ESTATE CORP., WHITE OAK REAL ESTATE CORP., and ORIOLE REAL ESTATE CORP., | |
| Defendants. | |

**CECCHI, District Judge.**

Before the Court is the Motion of defendants American Compressed Gases, Inc. ("ACG"), Trucar Leasing Corp. ("Trucar"), Gold Finch Real Estate Corp. ("Gold Finch"), White Oak Real Estate Corp. ("White Oak"), and Oriole Real Estate Corp. ("Oriole") (collectively, "Defendants") to Dismiss the Complaint pursuant to Rule 12(b)(6) of The Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Also before the Court is the Motion of plaintiffs Allen Swerdlick, John Zak, Anthony Zappula, John Sullivan, Anthony Storz, Luis Herrera as Trustees for the Local 807 Labor-Management Pension Fund (the "Trustees"), and the Local 807 Labor-Management Pension Fund (the "Pension Fund") (collectively, "Plaintiffs") for

Preliminary Injunction enjoining Defendants from arbitrating their claims.  The Court decides both Motions without oral argument pursuant to Rule 78.[1]  Having considered the parties' submissions and for the reasons set forth below, the Court grants Defendants' Motion to Dismiss and denies Plaintiffs' Motion for Preliminary Injunction.

## I.     BACKGROUND

Plaintiffs commenced this action on July 31, 2014, seeking a Declaratory Judgment and an Order to Enjoin or Stay Arbitration under the statutes promulgated by the Employee Retirement Income Security Act of 1974 ("ERISA").  (See generally Compl., ECF. No. 1).  Plaintiffs allege this Court has jurisdiction over the claims pursuant to ERISA § 502, 29 U.S.C. § 1132(e), 1132(f), and 1451(c).  The following facts alleged in the Complaint are largely undisputed.

Prior to 2012, Arthur and Valerie Ramsdell (the "Ramsdells"), who are non-parties to this action, were the sole shareholders of all Defendants. (Compl. at ¶23).  Also during this time, ACG was the sole shareholder of non-party Dry Ice Corp. ("Dry Ice").  Dry Ice was bound by a collective bargaining agreement with the Truck Drivers Local 807, IBT of Long Island City, New York under which Dry Ice was required to make contributions to the Pension Fund on behalf of certain employees. (See Compl. at ¶12).

On January 1, 2012, ACG divested itself of ownership of Dry Ice by transferring the stock to the Ramsdells. (Compl. at ¶25).  At this point, the Ramsdells were the sole shareholders of all Defendants and Dry Ice.  Although neither the Complaint nor the attached exhibits allege the

_____

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

2

precise date, by December 31, 2012, the Ramsdells had transferred 100% of their ownership interest in Dry Ice to their adult son Christopher Ramsdell and 100% of their ownership interest in ACG to their other adult son, Keith Ramsdell. (Compl. at ¶26).

Subsequently, Dry Ice withdrew from the Pension Fund on or about May 20, 2013 and ceased making payments to the Pension Fund. (Compl. at ¶14).  On June 24, 2013, the Pension Fund served Dry Ice with a Notice and Demand (the "Notice") for payment of the withdrawal liability. (Compl. at ¶16).  The Notice alleged that Dry Ice incurred a withdrawal liability to the Pension Fund in the principal amount of $3,084,869.  On September 20, 2013, Dry Ice requested the Pension Fund to review its position regarding the withdrawal liability assessment ("Request for Review"). (Compl. at ¶19).  On October 9, 2013, the Pension Fund denied Dry Ice's Request for Review ("Review Denial"). (Compl. at ¶21).  Over seven months later, on May 16, 2014, the Pension Fund notified Defendants that it considered them part of a common control group with Dry Ice and that they were therefore jointly and severally liable for Dry Ice's outstanding contributions. (Compl., Exh. A at *2).  Four days later, on May 20, 2014, Defendants submitted a Request for Review of the Pension Fund's decision regarding the common control group. (Id.)  On June 13, 2014, the Pension Fund denied Defendants' Request for Review advising them that it still considered Defendants to be part of the common control group and therefore liable. (Id.)

Defendants subsequently submitted a demand for arbitration on July 7, 2014, claiming that (1) the Notice to Dry Ice was not effective notice to the Defendants as to their own withdrawal liability and (2) they were not part of the common control group at the time of withdrawal. (Compl. at ¶39, Exh. A).  Plaintiffs initiated this action on July 31, 2014, asking the Court to enjoin or stay the arbitration proceeding on the grounds that Defendants purportedly were untimely in bringing the arbitration demand. (Compl. at ¶41-49).  Defendants filed the present Motion to Dismiss on

August 8, 2014, and Plaintiffs filed a Motion for Preliminary Injunction on September 8, 2014. (ECF Nos. 5, 10).

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

For a complaint to avoid dismissal pursuant to Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When evaluating the sufficiency of a complaint, Courts are required to accept all well-pleaded allegations in the Complaint as true and to draw all reasonable inferences in favor of the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  Furthermore, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal citations and quotations omitted). Accordingly, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

Based on this procedural posture, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d. Cir. 2004) (citation omitted). This Complaint relies, directly or indirectly, upon a number of documents attached as exhibits and referenced in the Complaint.  The Court will consider these documents about which there is no dispute as to authenticity, and to the extent they contradict the Complaint's factual allegations, the documents will control. See ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 n.8 (3d Cir. 1994)

("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control.").

**B.      Motion for Preliminary Injunction**

"Preliminary injunctive relief is an extraordinary remedy that should be granted only in limited circumstances." KOS Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (quotation omitted). Plaintiff bears the burden to show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. Sypniewski v. Warren Hills Reg'l Bd. of Educ., 307 F.3d 243, 252 (3d Cir. 2002). Further, "[w]hile all four factors are important, failure to show either likelihood of success on the merits or irreparable harm must necessarily result in denial of a preliminary injunction." In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982).

**III.    <u>DISCUSSION</u>**

The Court must decide whether arbitration is the proper venue for the parties to litigate certain threshold issues first.  The relief sought in Plaintiffs' Complaint asks the Court to enjoin or stay the arbitration proceedings that have already commenced.  Defendants' present Motion to Dismiss argues that the relief sought cannot be granted because arbitration is mandated by statute, and therefore dismissal under Rule 12(b)(6) is warranted.  For the reasons set forth below, the Court agrees with Defendants.

**A.      ERISA and MPPAA Legal Framework**

The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §1401(b)(1), is a series of amendments to the Employee Retirement Income Security Act of 1974 ("ERISA"). See 29 U.S.C. §1001 et seq.  Congress enacted the MPPAA in particular because it

found that existing statutes "did not adequately protect plans from the adverse consequences that resulted when individual employers terminate[d] their participation in, or withdr[e]w from, multiemployer plans." Pension Ben. Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 722, 104 S. Ct. 2709, 2714 (1984). The MPPAA addressed this problem by assessing such employers with withdrawal liability, defined in the statute as the employer's adjusted "allocable amount of unfunded vested benefits." Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d 1241, 1243-44 (3d Cir. 1987) (citing 29 U.S.C. § 1381(b)(1) (1982)).

Provisions for the quick and informal resolution of withdrawal liability disputes are an integral part of MPPAA's statutory scheme. Flying Tiger, 830 F.2d at 1244. The MPPAA requires a plan's trustees to determine initially whether a withdrawal has occurred. 29 U.S.C. §§ 1382(1), 1399(b)(1)(A)(i). When the trustees conclude that a withdrawal has taken place, they must then notify the employer of the amount of liability and demand payment in accordance with an amortization schedule. 29 U.S.C. §§ 1382(2), 1382(3), 1399(b)(1)(B). The Notice must include the amount of liability and a schedule of installment payments, and the withdrawn employer must begin paying according to the schedule. See Robbins v. Pepsi-Cola Metro. Bottling Co., 800 F.2d 641, 642-43 (7th Cir. 1986)(per curiam); see also Penske Logistics, LLC v. Freight Drivers & Helpers Local Union No. 557, 2009 WL 1383298, at *2 (E.D. Pa. 2009). Thereafter, the employer may within ninety (90) days ask the trustees to conduct a reasonable "review" of the computed liability. 29 U.S.C. § 1399(b)(2)(A)(i) (1982). If a dispute remains after the plan sponsor responds, either party may initiate arbitration proceedings within sixty (60) days. The MPPAA provides that

> [a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of ... this title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60-day period.

6

29 U.S.C. § 1401(b)(1).  Finally, "[u]pon completion of the arbitration proceedings in favor of one of the parties," MPPAA permits "any party thereto" to bring an action "to enforce, vacate or modify the arbitration's award" in the appropriate federal district court. <u>Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia</u>, 830 F.2d 1241, 1244 (3d Cir. 1987) (quoting 29 U.S.C. § 1401(b)(2) (1982)).

Whether a litigant was an "employer" under the MPPAA and ERISA is a question of law. <u>See Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia</u>, 830 F.2d 1241 (3d Cir. 1987). 29 U.S.C. §4001(b)(1) states that "[f]or the purposes of this title, under regulations prescribed by the corporation, all employees of trades or businesses (whether or not incorporated) *which are under common control shall be treated as employed by a single employer* and all such trades and businesses as a single employer." (emphasis added).  Determining whether a litigant was part of a control group for the purposes of employer liability is a question of legal status measured at the time the actual withdrawal from the pension plan occurred. <u>See Bd. of Trs. of Trucking Emps. of North Jersey Welfare Fund v. Centra</u>, 983 F.3d 495, 502 (3d Cir. 1992).  Thus, for entities to be part of a control group (and therefore jointly and severally liable for withdrawal purposes), there must be some measure of ownership commonality between those entities at the time of withdrawal.

**B.  Analysis**

With the relevant alleged facts and statutory framework set forth above, Plaintiffs' claims for relief rely on the following theory.  First, prior to late 2012, Defendants were part of a common control group with Dry Ice and ACG because the Ramsdells owned all interest in the Defendants as well as Dry Ice.  Second, even after the Ramsdells divested their interest in Dry Ice to their son Christopher Ramsdell, Defendants continued to be part of a common control group with respect to

7

Dry Ice because of numerous factors including, but not limited to 1) Dry Ice and Defendants share the same counsel and accounting firm, 2) the Ramsdells' divestment of Dry Ice and ACG to their two sons kept both corporations "within the same nuclear family," 3) Dry Ice and ACG have the same principal business address in Tappan, New Jersey as well as branches at the same address in Maspeth, New York, and 4) Dry Ice's website currently links to ACG's website. (Compl. at ¶36).

Third, as soon as the Pension Fund served Dry Ice with Notice on June 24, 2013, Defendants had both actual and constructive notice as to their own liability because they were all part of the same common control group for the reasons stated above. (Pls' Br. in Opp. at 11-13). Similarly, Defendants had actual and constructive notice of the Pension Fund's October 9, 2013 Review Denial, thereby triggering the sixty (60) day period to initiate arbitration. Fourth, because Defendants had actual and constructive notice of the Pension Fund's June 24, 2013 Notice and October 9, 2013 Review Denial, Defendants had until December 8, 2013 to timely initiate arbitration proceedings under the MPPAA. Because Defendants did not initiate arbitration until July 7, 2014, they are presently time-barred from compelling Plaintiffs to participate in arbitration.

Defendants assert in their moving papers that the Court should dismiss the Complaint because, even if Plaintiffs' factual allegations are true, the applicable law does not permit the Court to grant the relief sought. (Defs' Br. in Supp. at 6). Defendants appear to argue, as a threshold issue, that determining whether Defendants were part of a common control group under the MPPAA under the present set of facts is exclusively reserved for arbitration. Furthermore, Defendants argue that neither the June 24, 2013 Notice to Dry Ice nor the October 9, 2013 Review Denial provided notice to Defendants because they were no longer part of the same common control group at the time Dry Ice withdrew from the Pension Fund. (Defs' Br. in Supp. at 5). As such, Defendants were not "employers" under ERISA and the MPPAA when Dry Ice withdrew

8

from the Pension Fund.  Defendants conclude that the statutory sixty (60) day time period for them to commence arbitration did not accrue until May 16, 2014 when the Pension Fund sent the Review Denial to Defendants.  (Id. at 6).  Because their July 7, 2014 demand for arbitration was timely, Defendants contend the MPPAA requires this dispute to proceed in that forum instead of federal court. (Id. at 6-8).

### 1.    Defendants' Legal Status Is Properly Decided by Arbitration

The Third Circuit has held the MPPAA's dispute resolution procedures mandating arbitration must be followed when 1) there is no question that the party against which withdrawal liability is being asserted was part of the commonly controlled group of an employer subject to the MPPAA *at some point in time*, and 2) where the disputed issues fall within the purview of MPPAA provisions that are expressly reserved for arbitration. See Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d 1241, 1247, 1250 (3d Cir. 1987) (holding that whether the purpose of the sale of the fund employer was "to evade or avoid withdrawal liability" is properly decided through arbitration).  The Flying Tiger Court articulated a clear distinction between cases where the question of a party's legal status as employer should be decided by a district court and when that party's status should be determined through arbitration.  The Court stated, in relevant part:

> The issue of whether one remains an employer on the date of withdrawal is not the same issue as whether one ever became an 'employer' for the purposes of ERISA generally and MPPAA in particular.  The latter is an issue for the court since its resolution determines the arbitrator's authority over the dispute.  The former is an issue for the arbitrator since its resolution turns on the applicability of MPPAA provisions relating to employer withdrawals-provisions Congress specifically placed within the purview of the arbitrator.

830 F.2d at 1250-51 (quoting Banner Indus., Inc. v. Central States, Southeast & Southwest Areas

Pension Fund, 657 F. Supp. 875, 882 (N.D. Ill. 1987)).  The Third Circuit again articulated the same reasoning in Doherty v. Teamsters Pens. Trust Fund of Philadelphia and Vicinity. 16 F.3d 1386 (3d Cir. 1994), as amended on reh'g (Mar. 17, 1994).  In Doherty, the Third Circuit held that whether two individual stockholders were subject to withdrawal liability as alter egos of a plan employer was for the district court to decide, not arbitration. Id. at 1390-91.  The court reasoned that because the liability determination rested on whether the defendants were ever part of a common control group, the district court needed to determine whether the MPPAA's dispute resolution procedures apply to them. Id.  It is well settled law under Doherty that district courts retain jurisdiction over cases where there is a dispute regarding whether the defendants were ever part of a commonly controlled group.  However, the Flying Tiger Court makes clear that the MPPAA requires the timely initiation of arbitration when it is undisputed that the defendants were part of a commonly controlled group at some point in time, but there is a dispute regarding the legal status of the defendants at the time of withdrawal.

The facts of the present case fit squarely within the criteria set forth by the Court in Flying Tiger.  The undisputed facts as to the Ramsdells ownership interests and the corporate structure of their holdings clearly establishes that Defendants were part of a commonly controlled group prior to 2012. See IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 130 (3d Cir. 1986).  This chronology of events establishes that Defendants and Dry Ice were under common control "at some point in time" under Flying Tiger. 830 F.2d at 1247.

The second criteria in Flying Tiger requires that the disputed issues fall within the purview of MPPAA provisions that are expressly reserved for arbitration. 830 F.2d at 1247.  The MPPAA explicitly provides that any transaction designed to "evade or avoid" withdrawal liability should be ignored—that is, it should be presumed that the purportedly "sham" transaction did not occur—

in determining a party's legal status as an employer. 29 U.S.C. 1392(c). The <u>Flying Tiger</u> Court stated that "the central dispute between [the parties] concerns whether the sale must be ignored under the MPPAA's 'evade or avoid' provision" and was therefore subject to arbitration. 830 F.2d at 1247-48. The Court notes that while the present Plaintiffs discuss the MPPAA "evade or avoid" provision in both the Complaint and its brief in opposition to this Motion, they do not appear to allege that the Ramsdells' divestment of Dry Ice or ACG was executed for this purpose. (<u>See</u> Compl. at ¶29-30). Instead, Plaintiffs argue that the burden was on Defendants to timely raise the "evade or avoid" issue in arbitration. (Pls' Br. in Opp. at 20-22).

Plaintiffs appear to conflate the burden to timely initiate arbitration proceedings with the burden to establish a transaction was executed to "evade or avoid" withdrawal liability. First, the MPPAA clearly states that "*the plan sponsor shall have the burden to establish*, by a preponderance of the evidence, the elements of the claim under section 1392(c) of this title that a principal purpose of the transaction was to evade or avoid withdrawal liability under this subtitle." 29 U.S.C. § 1401(e)(2)(A)(ii) (emphasis added). Therefore, it is Plaintiffs that must establish that the purpose of divesting Dry Ice was to "evade or avoid" liability, not Defendants. Based on the widespread discussion of "evade or avoid" in the pleading and submissions of both parties, it is clear to the Court that whether the Ramsdells' divestment of Dry Ice and ACG was for the purpose of evading or avoiding withdrawal liability is central to the resolution of this dispute. Therefore, the second criteria set forth in <u>Flying Tiger</u>—that the disputed issues fall within the purview of MPPAA provisions that are expressly reserved for arbitration—is satisfied in this case.

### 2. Arbitration Was Presumptively Commenced Timely

Plaintiffs frame the bulk of their argument on the theory that the Notice and Review Denial served upon Dry Ice were effective as to Defendants primarily because 1) the Ramsdells had only

11

recently divested their ownership interests in Dry Ice and ACG to their sons and 2) all the entities at issue were owned by the same "nuclear family" that maintains "close business associations with each other (i.e. sharing a website, counsel, accountant, officers, etc.)." (Pls' Br. in Opp. at 16). In essence, Plaintiffs argue that because Defendants were or should have been aware of the Notice of withdrawal liability as to Dry Ice, Defendants had actual notice of a potential claim against Defendants. As Plaintiffs contend, once the Pension Fund served Dry Ice with its Review Denial on October 9, 2013, the sixty (60) day time period for Defendants to initiate arbitration began to run. (Id. at 13). According to Plaintiffs, because Defendants did not initiate arbitration by December 8, 2013, commencing arbitration on July 7, 2014 is barred under the MPPAA as untimely.

As a threshold issue, the Court notes that because there is a dispute regarding Defendants' legal status at the time Dry Ice withdrew from the Pension Plan, there is a presumption that the sixty (60) day period for Defendants to commence arbitration did not begin to accrue until June 13, 2014 when the Pension Fund sent Defendants the Review Denial. See Doherty v. Teamsters Pens. Trust Fund of Philadelphia & Vicinity, 16 F.3d 1386-1390 (3d Cir. 1994), as amended on reh'g (Mar. 17, 1994) (calculating the period to initiate arbitration based on the date the plaintiff notified the former members of the control group, not the date the plaintiff notified the withdrawn employer). Based on this time frame, Defendants appear to have timely begun the arbitration on July 7, 2014, less than thirty (30) days after the period began. By arguing that the arbitration was untimely based on Defendants' legal status at the time Dry Ice withdrew from the Pension Fund, Plaintiffs would have the Court collapse the "evade or avoid" and arbitration timeliness issues into one inquiry. This result would obviate the MPPAA's clearly articulated purpose of allowing parties first to arbitrate whether a defendant was an "employer" as part of a commonly controlled

12

group.

The Third Circuit articulated the same reasoning when it held that providing notice to the withdrawn employer is effective on the defendants only after a determination is made that the defendants were part of a commonly controlled group. See Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc.-Pension Fund v. Kero Leasing Corp., 377 F.3d 288, 298-99 (3d Cir. 2004) (holding the doctrine of "notice to one is notice to all" is applicable only after the Defendant's legal status is determined).  In Kero Leasing, the participating employer was sold by its founder and sole shareholder several years before it ceased making payments to the pension plan. 377 F.3d at 291-92.  The plaintiffs argued that the notice to the plan employer was effective on the founder, even though he had no ownership in that business for years.  The Court disagreed, holding that "notice to one" is not necessarily "notice to all" because "an 'evade or avoid' determination must be asserted, allowing for the necessary arbitration proceedings that would be governed entirely by provisions of the MPPAA . . . ." Kero Leasing Corp., 377 F.3d 288, 301-02 (3d Cir. 2004).

Plaintiffs argue against following Kero Leasing because, among other reasons, it appears as though more time elapsed between when the defendant sold his interest in the employer and when the employer withdrew from the pension plan than in the present case.  However, both the rationale and rule of law established by Kero Leasing and other Third Circuit cases are applicable and binding. The Kero Leasing Court did not determine whether the transaction was executed in an attempt to "evade or avoid" liability, only that arbitration was the proper venue to litigate that issue. Id.  The same question is presently before this Court.  The purpose of the MPPAA is to facilitate arbitration to decide certain disputes that arise under ERISA before proceeding to federal court. See Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d 1241,

13

1248 (3d Cir. 1987).  One of the clearly enumerated disputes under the purview of the MPPAA and subject to arbitration is whether a transaction was executed for the purpose to "evade or avoid" withdrawal liability.  Id.  Plaintiffs cannot now rely on the Notice served on Dry Ice to avoid arbitration with Defendants as mandated by the MPPAA.  Accordingly, the arbitration must be allowed to proceed to determine the "evade or avoid" question first.

## IV.   **PRELIMINARY INJUNCTION**

The Court notes that Plaintiffs' Motion for Preliminary Injunction appears to seek the same relief requested in the Complaint.  In particular, both the Complaint and Motion for Preliminary Injunction ask this Court to enjoin the arbitration proceedings.  Injunctive relief is an extraordinary remedy and should only be granted in limited circumstances.  Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002).  In order to obtain this extraordinary preliminary relief, the moving party must demonstrate a likelihood of success on the merits, the probability of irreparable harm, absence of greater harm to the non-moving party, and that public interest favors granting the injunction.  See KOS Pharm., Inc. v. Andrx Corp., 369 F.3d 700 (3d Cir. 2004); Shire U.S. Inc. v. Barr Labs, Inc., 329 F.3d 348 (3d Cir. 2003); Hoxworth v. Blinder, Robison & Co., 903 F.2d 186 (3d Cir. 1990).  Plaintiffs fail to show any of these four factors, and therefore the Court denies the Motion for Preliminary Injunction.

First, Plaintiffs cannot demonstrate a likelihood of success on the merits because, as discussed at length above, the MPPAA requires the arbitration to proceed.  Therefore, this Court cannot enjoin the proceedings as Plaintiffs request because arbitration is obligatory.  See EUSA-Allied Acquisition Corp. v. Teamsters Pension Trust Fund of Philadelphia & Vicinity, No. CIV.A. 11-3181 JBS, 2011 WL 3651315, at *9-10 (D.N.J. Aug. 18, 2011) (stating the mandatory

arbitration of withdrawal liability dispute under the MPPAA foreclosed any likelihood of success on the merits).  Therefore, Plaintiffs cannot show a reasonable probability of success on the merits because the Court grants Defendants' Motion to Dismiss.

Plaintiffs argue that they will suffer irreparable harm if forced to arbitrate when they did not previously agree to do so. (Pls' Br. in Sup. at 10-11, ECF No. 10-1).  To support this argument Plaintiffs rely on PaineWebber Inc. v. Hartmann, 921 F.2d 507, 515 (3d Cir. 1990), overruled on other grounds by Howsam v. Dean Witter Reynolds, 537 U.S. 79, 85, 123 S. Ct. 588 (2002).  The Hartmann parties disagreed about whether they agreed to binding arbitration as part of a purported contract. Id.  This case is distinguishable from Hartmann because arbitration is mandated by federal statute, not by agreement of the parties.

Furthermore, Plaintiffs cannot show that resolving certain aspects of this dispute through arbitration will cause irreparable harm because Dry Ice continues to make its required interim payments for its withdrawal liability.  See EUSA-Allied Acquisition, 2011 WL 3651315, at *10-11 (D.N.J. Aug. 18, 2011) (stating that "Plaintiff's apparent ability to make its initial interim withdrawal payment raises doubts about the immediacy of the harm and whether any such harm would truly be irreparable.").  As such, no injunction appears necessary to preserve Plaintiffs' ability to receive the required payments.  Because Plaintiffs have failed to establish a reasonable likelihood of success and irreparable harm, the motion should be denied. See Shire U.S. Inc. v. Barr labs, Inc., 329 F.3d 348 (3d Cir. 2003) (holding the district court did not abuse its discretion by denying motion for preliminary injunction solely because plaintiff failed to demonstrate likelihood of success on the merits).

Even if Plaintiffs' failure to demonstrate the first two factors is not dispositive, the third and fourth Kos factors used in determining whether to grant preliminary injunctive relief also

weigh in favor of denying the motion. The moving party must demonstrate that granting preliminary relief will not result in even greater harm to the non-moving party. <u>KOS Pharm., Inc. v. Andrx Corp.</u>, 369 F.3d 700, 708 (3d Cir. 2004). Enjoining or staying the arbitration proceedings would deny Defendants the speedy and efficient resolution of this matter through mandated arbitration. <u>See</u> <u>Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.</u>, 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013) <u>aff'd sub nom.</u> <u>Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.</u>, 764 F.3d 210 (2d Cir. 2014). Lastly, Plaintiff must also show that public interest favors enjoining the arbitration. <u>KOS Pharm., Inc.</u>, 369 F.3d at 708. The Third Circuit has recognized "the strong public and private interest in maintaining an effective grievance/arbitration process to settle disputes . . . ." <u>Dykes v. Se. Pennsylvania Transp. Auth.</u>, 68 F.3d 1564, 1572 (3d Cir. 1995) (quoting <u>Armstrong v. Meyers</u>, 964 F.2d 948, 951 (9th Cir. 1992). Plaintiffs have not, therefore, established that public interest favors enjoining the arbitration.

Plaintiffs have not demonstrated that any of the four <u>Kos</u> factors weigh in favor of granting the motion for preliminary injunction. A party's failure to establish any element in its favor renders a preliminary injunction inappropriate. <u>Nutrasweet Co. v. Vit–Mar Enters., Inc.</u>, 176 F.3d 151, 153 (3d Cir.1999). Therefore, the Court denies the Motion for Preliminary Injunction.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss is granted and Plaintiffs' Motion for Preliminary Injunction is denied. An appropriate Order accompanies this Opinion.

DATED: March 26, 2015 

_____

**CLAIRE C. CECCHI, U.S.D.J.**

16